IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

IRIS BROWN                                                                                                PLAINTIFF

v.                                    CIVIL NO. 5:19-CV-5138

ANDREW M. SAUL,[1] Commissioner,
Social Security Administration                                                                DEFENDANT

## **MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, Iris Brown, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for a period of disability and disability insurance benefits (DIB) under the provisions of Title II of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. § 405(g).

**I.       Procedural Background:**

Plaintiff protectively filed her current application for DIB on January 24, 2018, alleging an inability to work since January 15, 2014, due to the following: fibromyalgia; degenerative disc disease; chronic fatigue; limited range of motion and pain in neck; poor sleep; loss of strength in bilateral hands; psoriasis on back and upper legs; pain in shoulders; limited ability to walk, climb stairs, stand, and sit; depression; and anxiety. (Tr. 61, 74). For purposes of DIB,

---

[1] Andrew M. Saul has been appointed to serve as Commissioner of Social Security, and is substituted as Defendant, pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure.

1

Plaintiff's date last insured was December 31, 2016. (Tr. 60, 73). An administrative hearing was held on February 8, 2019. (Tr. 25-51). Plaintiff and her counsel were present, and Plaintiff testified. (Tr. 31-47). A vocational expert (VE) appeared by phone and testified. (Tr. 48-50). The ALJ issued a written opinion dated February 25, 2019, where he found that the Plaintiff had severe impairments of fibromyalgia, degenerative disc disease (DDD), and obesity. (Tr. 13). However, after reviewing the evidence in its entirety, the ALJ determined that the Plaintiff's impairments did not meet or equal the level of severity of any listed impairments described in Appendix 1 of the Regulations (20 CFR, Subpart P, Appendix 1). (Tr. 15). The ALJ found Plaintiff retained the residual functional capacity (RFC) to perform light work as defined in 20 CFR 404.1567(b), except that Plaintiff could frequently climb, balance, crawl, kneel, stoop, and crouch, and she could frequently reach overhead bilaterally. (Tr. 15). With the help of VE testimony, the ALJ determined that while Plaintiff was able to perform her past relevant work as a retail store manager and an eBay sales/general merchandise sales representative. (Tr. 17). The ALJ concluded that the Plaintiff had not been under a disability within the meaning of the Social Security Act at any time from January 15, 2014, through December 31, 2016, the date last insured. (Tr. 18).

Subsequently, Plaintiff requested a review of the hearing decision by the Appeals Council, which was denied on June 6, 2019. (Tr. 1-6). Plaintiff filed a Petition for Judicial Review of the matter on July 25, 2019. (Doc. 2). Both parties have submitted briefs, and this case is before the undersigned for report and recommendation. (Docs. 15, 16).

The Court has reviewed the transcript in its entirety. The complete set of facts and arguments are presented in the parties' briefs and are repeated here only to the extent necessary.

II.     **Evidence Submitted:**

Plaintiff was born in 1960. (Tr. 26). At the hearing before the ALJ on February 8, 2019, testimony showed that Plaintiff completed a portion of the 12th grade but did not graduate from high school. (Tr. 26). Testimony showed that Plaintiff had past work as a retail store manager and general merchandise sales representative where she ran a family business on eBay. (Tr. 31-35).

Prior to the relevant time period, Plaintiff was treated for fibromyalgia and anxiety. (Tr. 272, 322, 324).

During the relevant time period, medical records showed that on May 20, 2014, Plaintiff saw Dr. Garland Thorn, family practitioner, at First Care South for fibromyalgia and fever. (Tr. 319). Clinic notes indicate Plaintiff was experiencing pain, but that she was not active, that she would not exercise, and that she wanted stronger medication. Plaintiff's fever was cyclic and occurred intermittently. (Tr. 319). Plaintiff's obesity was noted, and further tests were ordered to evaluate her fever. (Tr. 320).

On June 4, 2014, Plaintiff returned to Dr. Thorn for a follow up on fibromyalgia and fever. Again, Dr. Thorn noted that Plaintiff would not exercise, was not active, and wanted stronger pain medication. (Tr. 289). Her fever was intermittent. Dr. Thorn ordered blood work and a urine test. (Tr. 289).

On July 25, 2014, Plaintiff saw Dr. Thorn for a third follow up of her fibromyalgia. (Tr. 288). Her pain was constant, but stable, and was aggravated by movement and anxiety. Clinic notes indicate that medication and rest relieved her pain. She was assessed with fibromyalgia and generalized anxiety disorder. (Tr. 288).

3

On December 19, 2014, Plaintiff saw Dr. Thorn for problems with balance. Plaintiff stated that the problem had been present for the past year. She also reported paresthesia occurring randomly in various areas of her body, including her face and extremities. (Tr. 287). Plaintiff's obesity was noted. (Tr. 287).

At a January 15, 2015, visit with Dr. Thorn, Plaintiff reported eye problems with symptoms located on the upper lid and left sclera. She reported blurred vision, itching and red/purple color around the eye. (Tr. 285). Plaintiff was assessed with obesity, chemosis of the left conjunctiva, upper respiratory infection, scleritis, and chronic pain. She was instructed to follow a proper diet and exercise. (Tr. 312).

On March 20, 2015, Plaintiff returned to Dr. Thorn for a follow up of her arthralgias and scleritis. (Tr. 283). Dr. Thorn noted that Plaintiff's symptoms of arthralgias, including tingling in the arms and legs and insomnia, were constant and were improving. He also noted that her symptoms resolved on prednisone. (Tr. 307). Plaintiff's scleritis also improved with medication. (Tr. 283). Plaintiff was assessed with obesity and instructed on diet, activity and exercise. (Tr. 309). Further diagnostic evaluations were ordered including an MRI of the neck to rule out cervical radiculopathy. (Tr. 309).

On April 17, 2015, when Plaintiff saw Dr. Thorn, she reported pain in her neck, mid-back, bilateral shoulders, bilateral wrists, and bilateral hips. Plaintiff reported that the pain became worse when she used those areas. She also complained of fatigue. Plaintiff was assessed with obesity, arthralgia, psoriasis, and scleritis. (Tr. 281).

On May 14, 2015, Plaintiff saw Dr. Thomas Dykman, a rheumatologist at Fayetteville Diagnostic Clinic, for her musculoskeletal pain. Plaintiff reported that the pain was worsening

and was located in her bilateral hands, bilateral knees, bilateral shoulders, bilateral neck, bilateral hips, and lower back. Plaintiff also reported swelling and difficulty sleeping. Plaintiff's physical examination showed obesity, psoriasis, normal range of motion, no evidence of synovitis or evidence of joint dislocation, subluxation or laxity, normal motor strength, soft tissue discomfort with twelve out of eighteen tender points, and mild slowing of her gait. (Tr. 390). He assessed Plaintiff with myalgia, elevated sedimentation rate, low back pain, gait disturbance, and psoriasis. (Tr. 345). An x-ray of Plaintiff's lumbar spine showed mild degenerative disc disease with minimal osteoarthritis and incomplete sacralization of S1. (Tr. 348).

On June 10, 2015, Plaintiff saw Dr. Arin Stephens at First Care South for an onset of jaw pain that began three days prior. (Tr. 280). Plaintiff had a dental infection and was instructed to follow up with a dentist. (Tr. 280).

On August 4, 2015, Plaintiff returned to Dr. Dykman for a follow up of her musculoskeletal pain and trouble sleeping. (Tr. 344). Plaintiff's physical examination revealed her weight issues, her soft tissue discomfort with twelve out of eighteen tender points, and her normal balance and gait. (Tr. 386). Plaintiff's medications for her fibromyalgia were adjusted, and she was placed on over the counter Vitamin D. (Tr. 344).

On September 16, 2015, Plaintiff saw Rhonda Pauls, APRN at the Fayetteville Diagnostic Clinic for another follow up for her musculoskeletal pain. Plaintiff reported that she stopped taking Cymbalta because she could not tolerate the side effects. (Tr. 382). Plaintiff's physical examination showed her obesity and that she had ten out of eighteen tender points. (Tr. 383). Her gait and balance were normal, and her physical examination was

5

otherwise unremarkable. Nurse Pauls indicated Plaintiff's fibromyalgia was under sub-optimal control and discussed a trial of Lyrica with her. (Tr. 383).

On December 7, 2015, Plaintiff returned to Dr. Dykman for her musculoskeletal pain, which was aggravated by excessive activity and trouble sleeping. (Tr. 342). Plaintiff's physical examination revealed weight issues, psoriasis on her hands, tender points of twelve out of eighteen, and mild slowing of her gate. (Tr. 380). However, clinic notes indicate Plaintiff's gait disturbance was better on the lower dose of Amitriptyline. (Tr. 342).

On January 5, 2016, Plaintiff returned to Dr. Thorn, her primary care physician, for her first visit since April of 2015. (Tr. 278). Dr. Thorn's notes indicate Plaintiff's fibromyalgia was being managed by rheumatology. (Tr. 278). Dr. Thorn also concluded that the rash that she complained of showed signs of infection. (Tr. 300). Plaintiff was instructed to use antibacterial soap on the area, as discussed. (Tr. 300).

On January 19, 2016, Plaintiff reported persistent pain and trouble sleeping to Nurse Pauls. Clinic notes indicate Plaintiff was doing well on reduced Flexeril. (Tr. 341). Plaintiff's physical examination revealed her obesity, soft tissue discomfort with twelve out of eighteen tender points, and use of a simple cane for her balance and gait. (Tr. 375).

On March 7, 2016, Plaintiff reported to Nurse Pauls that she was having trouble sleeping and had not had any improvement in her pain. Plaintiff requested a dosage increase of Lyrica and Xanax. (Tr. 340). Plaintiff's physical examination showed her obesity, mild psoriatic rash on her hands, soft tissue discomfort with fourteen out of eighteen tender points, and a normal balance and gait. (Tr. 372). Plaintiff reported that she was being treated by

6

another doctor for her psoriasis. (Tr. 340). Plaintiff's fibromyalgia medication was adjusted. (Tr. 373).

On March 28, 2016, Plaintiff returned to see Nurse Pauls where she reported no improvement in sleep even after going up on her Xanax dosage three weeks prior. She also reported not seeing an improvement in her pain level since going on an increased dosage of Lyrica. Plaintiff also told Nurse Pauls that she was having to take hydrocodone three times a day and asked for a dosage increase. (Tr. 339). Plaintiff's physical examination showed weight issues, soft tissue discomfort with fourteen out of eighteen tender points, and normal balance and gait. (Tr. 369). Her fibromyalgia was under suboptimal control, her vitamin D deficiency was stable, and her psoriasis referred to another physician. (Tr. 370).

At her April 25, 2016, visit to see Nurse Pauls, Plaintiff stated that her sleep had improved with an increase in Xanax and her pain had improved with an increase of hydrocodone. Rest was also helping improve her symptoms. (Tr. 338). Plaintiff's physical examination showed weight issues, soft tissue discomfort with thirteen out of eighteen tender points, and use of a simple cane for balance and gait. (Tr. 366). Nurse Pauls opined that Plaintiff's fibromyalgia and vitamin D were stable, and her psoriasis was under suboptimal control. (tr. 366-367). Plaintiff was again advised to see another doctor for her psoriasis. (Tr. 367).

On June 6, 2016, Plaintiff reported to Dr. Dykman that she had musculoskeletal pain all over her body. Plaintiff reported morning stiffness; associated symptoms worse in the evenings; trouble sleeping; an inability to work due to pain; and the need for assistance with activities of daily living. (Tr. 337). Plaintiff's physical examination showed soft tissue

discomfort with twelve out of eighteen tender points and a slowing of her gait. (Tr. 363). Dr. Dykman increased Plaintiff's Lyrica and noted that her fibromyalgia medications would be adjusted as needed. (Tr. 363).

At her next visit to the Fayetteville Diagnostic Clinic on October 10, 2016, Plaintiff reported to Nurse Pauls that she had swelling and pain that was worse in the evening, which was aggravated by excessive activity. Plaintiff also reported not sleeping well. (Tr. 336). Her physical examination showed soft tissue discomfort with fourteen out of eighteen tender points and a normal balance and gait. (Tr. 360). Nurse Pauls noted that Plaintiff's fibromyalgia was under sub-optimal control, but she was otherwise stable. (Tr. 360).

On February 28, 2018, Dr. Dan Gardner, a non-examining medical consultant, performed a Physical RFC Assessment, wherein he found that Plaintiff was capable of medium work. (Tr. 69).

On March 2, 2018, Dr. Elizabeth Bucolo, Psy.D., a non-examining medical consultant, performed a Psychiatric Review Technique, where she opined that there was insufficient evidence to determine whether Plaintiff had limitations in the "B" Criteria areas. (Tr. 65-66).

On May 9, 2018, Dr. Kristin Jarrard, a non-examining medical consultant, performed a Physical RFC Assessment, wherein she affirmed Dr. Gardner's previous assessment finding Plaintiff capable of medium work. (Tr. 82).

On May 10, 2018, Dr. Brad Williams, Ph.D., a non-examining medical consultant, performed a Psychiatric Review Technique, where he arrived at the same conclusion as Dr. Bucolo that there was insufficient evidence to determine whether Plaintiff had limitations in the "B" Criteria areas. (Tr. 79).

After the relevant time period, Plaintiff continued to receive medical care from Dr. Thorn and Dr. Dykman in 2017 and 2018. On April 10, 2017, Plaintiff saw Dr. Dykman for complaints of musculoskeletal pain. Dr. Dykman noted that Plaintiff had stopped amitriptyline due to balance problems. (Tr. 356). Upon physical examination, Plaintiff had twelve of eighteen tender points and used a simple cane for balance and gait. (Tr. 357). Plaintiff's fibromyalgia medications were refilled. (Tr. 358).

Dr. Song Zang took over Plaintiff's care at Fayetteville Diagnostic Clinic in December of 2017. At that time, Dr. Zang assessed Plaintiff with joint pain, which was most likely from osteoarthritis. (Tr. 333). Dr. Zang's notes indicate that Plaintiff's RF/CCP/ANA/SS/ANCA testing results were negative and her SPEP was normal. (Tr. 352). Moreover, Plaintiff's lumbar spine imaging was negative for psoriatic spondyloarthropathy. (Tr. 352). Dr. Zang noted that Plaintiff had pain in her neck, low back, and lower extremities, but no significant joint swelling. (Tr. 352). Plaintiff's physical examination was normal with the exception of bony enlargements on her fingers. (Tr. 354). X-ray imaging of Plaintiff's lumbar spine ordered by Dr. Zang in December of 2017 showed degenerative disc damage mainly at the L3-4, L4-5 and L5-S1 levels, and facet joint degenerative changes with vertebral body height well maintained, which were consistent with osteoarthritis. (Tr. 347, 351). X-rays showed mild AC joint degenerative changes bilaterally with the glenohumeral joint space well maintained bilaterally in her shoulders; mild to moderate osteoarthritis in Plaintiff's knees; and mild degenerative joint damage with vertebral body height well maintained in Plaintiff's cervical spine. (Tr. 347).

Plaintiff saw Dr. Zang again on January 29, 2018, and Dr. Zang noted Plaintiff was still having some symptoms of pain in her hands, low back, and knees, but no significant joint swelling or stiffness. (Tr. 349). Dr. Zang noted Plaintiff's bony enlargements on her fingers

9

from osteoarthritis, but her physical examination was otherwise normal. (Tr. 351). Plaintiff was instructed to continue her fibromyalgia and osteoarthritis medications. (Tr. 351).

On April 30, 2018, Plaintiff saw Dr. Zang for polyarthropathy and joint and muscle pain consistent with fibromyalgia and osteoarthritis. Dr. Zang noted that Plaintiff was on "benzo and other med for FM." She was tolerating her medication well and had no significant joint swelling or stiffness. (Tr. 417). Dr. Zang noted some right elbow pain (without restrictions on her range of motion), which was consistent with epicondylitis. (Tr. 417). Other than her elbow pain, her physical examination was normal. (Tr. 419). Plaintiff was instructed to continue her medications and to ice, stretch, and use topical analgesic for her elbow. (Tr. 419).

Plaintiff saw Dr. Zang again on July 23, 2018, with complaints of back, joint and neck pain. Dr. Zang's notes indicate that Plaintiff tolerated Lyrica well and that she did not have any joint swelling or stiffness. (Tr. 406). Plaintiff's physical examination was normal, and she was instructed to stay on her current medications. (Tr. 408).

### III. Applicable Law:

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance, but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the

Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382(3)(C). A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. See 20 C.F.R. § 404.1520. Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of his RFC. See McCoy v. Schweiker, 683 F.2d 1138, 1141-42 (8th Cir.

1982), abrogated on other grounds by Higgins v. Apfel, 222 F.3d 504, 505 (8th Cir. 2000); 20 C.F.R. § 404.1520.

IV. **Discussion:**

Plaintiff asserts the following arguments on appeal: 1) that the ALJ erred in not properly evaluating Plaintiff's fibromyalgia under the relevant social security regulations and listings; 2) the ALJ erred in his RFC determination because the RFC was based upon the ALJ's lay opinion and lacked a proper medical foundation; and 3) in properly discounting the opinion of the agency physician, the ALJ created an evidentiary deficit that could not be resolved with this own law interpretation of the medical records. (Doc. 15, pp. 1-11).

A. **Listing of Impairments:**

Plaintiff argues that the ALJ erred by failing to determine that Plaintiff's impairment of fibromyalgia met or equaled Listing 14.09 (Inflammatory Arthritis) of the Listing of Impairments pursuant to 20 CFR Part 404, Subpart P, Appendix 1. (Doc. 15, pp. 7-9).

The burden of proof is on the Plaintiff to establish that her impairments meet or equal a listing. See Sullivan v. Zebley, 493 U.S. 521, 530-31, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990). To meet a listing, an impairment must meet all of the listing's specified criteria. Id. at 530, 110 S.Ct. 885 ("An impairment that manifests only some of these criteria, no matter how severely, does not qualify."); Johnson v. Barnhart, 390 F.3d 1067, 1070 (8th Cir. 2004). "Medical equivalence must be based on medical findings." 20 C.F.R. § 416.926(b) (2003); Sullivan, 493 U.S. at 531 ("a claimant ... must present medical findings equal in severity to all the criteria for the one most similar listed impairment").

In this case, Plaintiff's diagnosis of fibromyalgia predates the medical record for the relevant time period. (Tr. 272, 322, 324). During the time period at issue, Plaintiff saw her

12

primary care physician and a rheumatologist for treatment of fibromyalgia, which was at times assessed as a diagnosis of arthralgia or myalgia. (Tr. 281, 345). Plaintiff was treated conservatively for her fibromyalgia with anti-inflammatory and pain medication. Plaintiff's examinations by Dr. Dykman showed a number of tender points with soft tissue discomfort; however, her gait and balance were mostly normal. Plaintiff testified that she used a cane or a walker to "steady" herself when walking; however, there is nothing in the record during the relevant time period showing that a cane or walker was prescribed as part of her treatment. Moreover, while Plaintiff's medical records showed gait disturbance on a couple of occasions, Dr. Dykman noted that her gait improved with a lower dosage of amitriptyline. (Tr. 342). Once Dr. Zang took over Plaintiff's care, the record reveals that Plaintiff had bony enlargements on her fingers and elbow pain on one occasion, but her examinations were otherwise normal. (Tr. 351, 354, 408, 419). In addition to medication, Plaintiff was consistently advised to remain active, follow a healthy diet, and exercise as part of her treatment. (Tr. 289, 309, 312). The Eighth Circuit has held that, "[w]e will not consider your impairment to be [disabling] solely because it has the diagnosis of a listed impairment. It must also have the findings shown in the Listing for that impairment," Collins ex rel. Williams v. Barnhart, 335 F.3d 726, 731 (8th Cir. 2003) (quoting 20 C.F.R. § 404.1525(d)).

  Here, the ALJ explicitly found that through the date last insured, Plaintiff's impairments considered singly and in combination, did not meet or medically equal the criteria described in any of the impairments contained in the Listing of Impairments. While the ALJ did not explicitly address Listing 14.09 in the administrative decision, the ALJ stated that, "All reasonably applicable impairment listings have been considered." (Tr. 15).

After reviewing the entire evidence of record, the Court finds there is sufficient evidence to support the ALJ's determination that Plaintiff's fibromyalgia did not medically equal a Listing.

### B. Subjective Complaints and Symptom Evaluation:

The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of her pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of her medication; and (5) functional restrictions. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. Id. As the Eighth Circuit has observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." Edwards, 314 F.3d at 966.

After reviewing the administrative record, it is clear that the ALJ properly considered and evaluated Plaintiff's subjective complaints, including the Polaski factors. Plaintiff testified at the February 8, 2019, hearing before the ALJ that her symptoms began in 2011, and over time, her pain from fibromyalgia and osteoarthritis began to spread throughout her body. (Tr. 35-37). Plaintiff stated she had trouble sleeping and required naps during the day because of fatigue. (Tr. 40-41). She had no range of motion in her neck and had numbness in her arms. (Tr. 42). She used a cane to help prevent falls when she left the house to shop for groceries. (Tr. 44).

In a February 16, 2018, Function Report, Plaintiff stated that she was able to live on her own and care for her cats. (Tr. 220-221). She reported being able to care for herself; prepare

14

simple meals; do light house cleaning; go outside two or three times per day; ride in a car; and go out alone. While Plaintiff no longer drove a vehicle, she could do her shopping online and could manage her money. Plaintiff stated that she enjoyed reading, caring for her pets, watching television, attending game night with her friends, coloring, and using social media. (Tr. 224). Plaintiff stated that she could walk five to ten minutes before needing to rest. (Tr. 225). She reported that her ability to pay attention varied greatly; that she did not always finish what she started; that short, written instructions worked best for her; and that she could follow verbal instructions. (Tr. 225). She had no trouble getting along with others and handled stress "pretty well." (Tr. 226). She had a fear of steps and used a walker at times to ambulate. (Tr. 226).

As for Plaintiff's physical impairments, the record demonstrates that Plaintiff was treated conservatively with medication only. See Robinson v. Sullivan, 956 F.2d 836, 840 (8th Cir. 1992) (course of conservative treatment contradicted claims of disabling pain). There is no evidence in the record where Plaintiff's physicians recommended steroid injections, physical therapy, or biologics. The record also shows that at times Plaintiff's symptoms responded well to medication. Davidson v. Astrue, 578 F.3d 838, 846 (8th Cir. 2009) (impairments that are controllable or amenable to treatment do not support a finding of disability).

However, the record also shows that Plaintiff failed to follow the directives of her treating physicians when they instructed her to exercise and instead, she would continue to request stronger medications. See Dunahoo v. Apfel, 241 F.3d 1033,1038 (8th Cir. 2001) (claimant's failure to follow prescribed course of treatment weighed against credibility when assessing subjective complaints of pain).

As for Plaintiff's alleged mental impairments, the record shows that Plaintiff was treated for her depression and anxiety by her primary care physician and that she did not undergo inpatient or outpatient treatment or any form of treatment by a mental health professional. See Gowell v. Apfel, 242 F.3d 793, 796 (8th Cir. 2001) (holding that lack of evidence of ongoing counseling or psychiatric treatment for depression weighs against Plaintiff's claim of disability). Lastly, this Court notes that a mere diagnosis is not sufficient to prove disability, absent some evidence to establish a functional loss resulting from that diagnosis. See Trenary v. Bowen, 898 F.2d 1361, 1364 (8th Cir. 1990).

Although it is clear that Plaintiff suffers some degree of limitation, she has not established that she is unable to engage in any gainful activity. Accordingly, the Court concludes that substantial evidence supports the ALJ's conclusion that Plaintiff's subjective complaints were not totally credible.

**C.    ALJ's RFC Determination:**

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is assessed using all relevant evidence in the record. Id. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the

workplace. Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003). "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC." Id.

In the present case, the ALJ considered the medical assessments of non-examining agency medical consultants, Plaintiff's subjective complaints, and her medical records when he determined Plaintiff could perform light work with the exception of frequent climbing, balancing, crawling, kneeling, stooping, and crouching and overhead reaching bilaterally. (Tr. 15). The Court notes that in determining Plaintiff's RFC, the ALJ discussed the medical opinions of the non-examining medical professionals and set forth the reasons for the weight given to the opinions. Renstrom v. Astrue, 680 F.3d 1057, 1065 (8th Cir. 2012) ("It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians")(citations omitted); Prosch v. Apfel, 201 F.3d 1010 at 1012 (the ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole).

As noted previously, documents related to Plaintiff's prior establishment of fibromyalgia and anxiety, were not a part of the medical record before the ALJ. Plaintiff's primary care physician, Dr. Thorn, and her rheumatologist, Dr. Dykman, (and later Dr. Zang) were the primary treating physicians of record. Those doctors recommended medication, aerobic exercise, and a healthy diet as treatment. The record shows that Plaintiff did not follow recommendations to exercise or maintain a healthy lifestyle, so Plaintiff's medications were adjusted as needed. At times, Plaintiff reported an improvement in symptoms due to the medication dosages. In May of 2015, x-rays showed mild degenerative disc disease with minimal osteoarthritis and incomplete sacralization of S1. (Tr. 348). The only other imaging

17

contained in the medical record was after the relevant time period and was ordered by Dr. Zang. Those x-rays showed degenerative disc damage mainly at the L3-4, L4-5 and L5-S1 levels, and facet joint degenerative changes with vertebral body height well maintained, which were consistent with osteoarthritis; mild AC joint degenerative changes bilaterally with the glenohumeral joint space well maintained bilaterally in her shoulders; mild to moderate osteoarthritis in Plaintiff's knees; and mild degenerative joint damage with vertebral body height well maintained in Plaintiff's cervical spine. (Tr. 347, 351). Plaintiff's capacity to perform this level of light work with limitations is supported by the fact that Plaintiff's treating physicians placed no restrictions on her activities that would preclude performing the RFC determined. See Hutton v. Apfel, 175 F.3d 651, 655 (8th Cir. 1999) (lack of physician-imposed restrictions militates against a finding of total disability).

The ALJ considered state agency physician Dr. Kristen Jarrod's opinion that Plaintiff could perform medium work; yet, the ALJ concluded that based on the record as a whole Plaintiff was more limited, which was reflected in the RFC assessment. (Tr. 17).

The ALJ also took Plaintiff's obesity into account when determining that Plaintiff could perform light work with limitations. Heino v. Astrue, 578 F.3d 873, 881-882 (8th Cir. 2009) (when an ALJ references the claimant's obesity during the claim evaluation process, such review may be sufficient to avoid reversal).

Here, the record does not provide evidence of additional limitations prior to Plaintiff's date last insured, other than those set forth in the ALJ's RFC determination. Based upon a thorough review of the record, the Court finds that there was substantial evidence to support the ALJ's RFC determination of light work with frequent climbing, balancing, crawling,

kneeling, stooping, and crouching, and frequent overhead reaching bilaterally for the time period at issue.

### D. Past Relevant Work:

Plaintiff has the initial burden of proving that she suffers from a medically determinable impairment which precludes the performance of past work. Kirby v. Sullivan, 923 F.2d 1323, 1326 (8th Cir. 1991). Only after the claimant establishes that a disability precludes performance of past relevant work will the burden shift to the Commissioner to prove that the claimant can perform other work. Pickner v. Sullivan, 985 F.2d 401, 403 (8th Cir. 1993).

According to the Commissioner's interpretation of past relevant work, a claimant will not be found to be disabled if she retains the RFC to perform:

1. The actual functional demands and job duties of a particular past relevant job; *or*
2. The functional demands and job duties of the occupation as generally required by employers throughout the national economy.

20 C.F.R. §§ 404.1520(e); S.S.R. 82-61 (1982); Martin v. Sullivan, 901 F.2d 650, 653 (8th Cir. 1990) (expressly approving the two-part test from S.S.R. 82-61).

Here, the ALJ specifically found that Plaintiff could return to her past relevant work as a retail store manager and an eBay sales/general merchandise sales representative. (Tr. 30). In doing so, the ALJ relied upon the testimony of the VE, who after reviewing the ALJ's proposed hypothetical question, which included the limitations addressed in the RFC determination discussed above, opined that the hypothetical individual would be able to perform Plaintiff's past relevant work. See Gilbert v. Apfel, 175 F.3d 602, 604 (8th Cir. 1999) ("The testimony of a vocational expert is relevant at steps four and five of the Commissioner's

sequential analysis, when the question becomes whether a claimant with a severe impairment has the residual functional capacity to do past relevant work or other work.") (citations omitted). Accordingly, the Court finds substantial evidence to support the ALJ's finding that Plaintiff could perform her past relevant work as a retail store manager and an eBay sales/general merchandise sales representative as those jobs are generally performed.

## V. Conclusion:

Based on the foregoing, the Court recommends affirming the ALJ's decision, and dismissing Plaintiff's case with prejudice. **The parties have fourteen days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 8th day of July, 2020.

/s/ *Erin L. Wiedemann*
HON. ERIN L. WIEDEMANN
UNITED STATES MAGISTRATE JUDGE